UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

NANCY WHEELER, Personal Representative
For the ESTATE OF ALYSON MARIE
WHEELER, Deceased

    Plaintiff,

-vs-

UNITED STATES OF AMERICA,

    Defendant.

CASE NO: _____

HON. _____

BARRY R. CONYBEARE (P52056)
NATHANIEL HARRINGTON (P74782)
Conybeare Law Office, P.C.
Attorneys for Plaintiff
519 Main Street
St. Joseph, MI 49085
P: (269) 983-0561
barry@conybearelaw.com
nate@conybearelaw.com

**COMPLAINT AND AFFIDAVITS OF MERIT**

Plaintiff, Nancy Wheeler, Personal Representative for the Estate of Alyson Marie Wheeler, deceased, through her attorneys, Conybeare Law Office, P.C., states:

**NATURE OF THE CASE**

1. This is a medical malpractice wrongful death claim arising out of events occurring on January 15, 2019. On that date, Alyson Wheeler presented to Mwanza Bulaya, NP at the Cassopolis Family Clinic Network for treatment of pain in her right calf, which started on January 5, 2019. Despite Alyson's risk factors for DVT, NP Bulaya chose not to do an in-office ultrasound on Alyson's right calf, or send her to the hospital for ultrasound or admission and anticoagulation therapy. Instead, NP Bulaya diagnosed Alyson with

1

"hamstring tendonitis." Medications were prescribed, and Alyson was to return for follow up in ten days if she had no improvement in her symptoms. Two days later, on the morning of January 17, 2019, Alyson died suddenly from a pulmonary embolism caused by the untreated DVT. Alyson's death is a direct consequence of the negligence of NP Bulaya. The United States of America is liable under the FTCA because NP Bulaya was employed by Cassopolis Family Clinic Network, a federally qualified health center.

## THE PARTIES

### Plaintiff

2. Nancy Wheeler was appointed personal representative for her daughter, Alyson Wheeler, on August 19, 2020, by Order of the Cass County Probate Court.

3. As personal representative, Mrs. Wheeler is authorized and empowered to pursue all claims on behalf of the estate and interested parties under the Michigan Wrongful Death Act (MCL §600.2922) and the Federal Tort Claims Act (28 USC §1346(b)(1)).

4. Prior to her death, Alyson was a resident of the City of Dowagiac, County of Cassopolis, Michigan.

5. Pursuant to MCL 600.2912d, attached are plaintiff's Affidavits of Merit of Lisa L. Norris, N.P. (Exhibit 1) and Biree Andemariam, M.D. (Exhibit 2).

### Defendant

6. Defendant United States of America includes the U.S. Department of Health and Human Services (DHHS), Cassopolis Family Clinic Network (Cassopolis Family Clinic), and its employee, Mwanza Bulaya, NP.

7. DHHS is an authorized federal agency of Defendant United States of America.

8. At all times pertinent to this Complaint, Cassopolis Family Clinic was located and doing business in Cass County, Michigan, and was a Federally Qualified Health Center pursuant to 42 USC §254b and §233(g)-(n), operating under DHHS.

9. Cassopolis Family Clinic, at all times relevant to the allegations of this Complaint, operated a health care facility and held itself open for family practice care and treatment of the general public, including Alyson Wheeler.

10. At all times relevant to the allegations of this Complaint, Cassopolis Family Clinic represented and held itself out to the public, including Alyson Wheeler, that it employed and maintained on its staff, skilled and competent personnel, including nurse practitioners.

11. NP Bulaya is a certified nurse practitioner licensed to practice in the State of Michigan who, at all times relevant to the allegations of this Complaint, practiced in Cass County, Michigan. At all times relevant to the allegations of this Complaint, NP Bulaya practiced family medicine and held herself out as a competent clinician in that field.

12. At all times pertinent, NP Bulaya was an employee of Cassopolis Family Clinic.

13. At all times relevant to this Complaint, NP Bulaya acted as the agent of Cassopolis Family Clinic, and therefore the United States of America is vicariously responsible for her professional negligence/malpractice as set forth in this Complaint. At all times relevant to this Complaint, NP Bulaya acted within the scope of her employment/agency in the context of a nurse-practitioner/patient relationship.

## JURISDICTION AND VENUE

14. The amount in controversy exceeds $75,000.00, excluding costs, interest, and attorney fees.

15. Plaintiff properly presented Administrative Tort Claims (Tort Claims) for medical negligence to the DHHS pursuant to 28 USC §2675 via overnight UPS mail on January 5, 2021 (Exhibit 3).

16. In a letter dated January 28, 2021, DHHS acknowledged receipt of the Tort Claims on January 8, 2021, and acknowledged that the Tort Claims had been filed with the appropriate federal agency. (Exhibit 4).

17. In addition, DHHS requested additional information for consideration, which plaintiff supplied on February 12, 2021 (per requested secure email).

18. By letter dated September 13, 2021, DHHS denied plaintiff's claim. (Exhibit 5).

19. The cause of action pled in this Complaint is the same as contained in the Tort Claims.

20. The United States of America has waived governmental immunity and consented to this lawsuit by the enactment of 28 USC §1346(b)(1).

21. Subject matter jurisdiction is proper pursuant to 28 USC §1331.

22. Venue is proper in the Western District of Michigan because all of the events giving rise to the action took place in Cass County, Michigan.

**FACTUAL ALLEGATIONS**

23. On January 5, 2019, Alyson developed pain in her right calf. There was no event or injury that precipitated the calf pain. The pain did not improve and between January 9 and January 14, 2019 Alyson sought treatment from her chiropractor, Dr. James Eckman, Jr., and he prescribed conservative care - rest, ice, heat, and stretches.

24. Upon her return to Dr. Eckman's office on January 14, 2019, Alyson indicated her right calf had not improved and she was going to see her family physician the next day.

4

25. On the afternoon of January 15, 2019, Alyson arrived at the Cassopolis Family Clinic for her appointment with Mwanza Bulaya, NP. The following was charted:

**Chief Complaint**
Patient presents with
- Leg Problem
    worse in the morning. while walking the muscle loosens, states that this does help. when she lays down and relaxes the cramps start to return. has been occuring since 1/05/19

Pain is worse at night and upon arising
Has been to chiropractor has been using ice and heat tylenol and ibuprofen
Pain was excruciating this morning took Ibuprofen pain went away
Pain now during ov 0/10

**Leg Pain**
The incident occurred more than 1 week ago. The incident occurred at home. There was no injury mechanism. The pain is at a severity of 0/10. The patient is experiencing no pain. The pain has been intermittent since onset. Pertinent negatives include no inability to bear weight, loss of motion, loss of sensation, muscle weakness or tingling. She reports no foreign bodies present. The symptoms are aggravated by movement. She has tried elevation, ice, heat, acetaminophen, rest and NSAIDs for the symptoms. The treatment provided mild relief.

**Physical Exam**
Constitutional: She appears well-developed and well-nourished. No distress.
Musculoskeletal:



Legs: 1: Marked area area of pain consistent with tendonitis of hamstring muscles
**Negative red flags for DVT**
**No pain with flexion, pain with full extension**
Skin: She is not diaphoretic.
Nursing note and vitals reviewed.

```
Assessment:
                           SNOMED CT(R)
1.  Hamstring tendonitis   HAMSTRING INJURY    cyclobenzaprine (FLEXERIL)
                                               10 MG tablet
                                               predniSONE (DELTASONE)
                                               20 MG tablet

Plan:
1. Flexeril as needed, did not rx Zanaflex as initially planned, contraindicated with BC.
2. Prednisone 20 mg daily for 7 days.
3. RTC after 10 days of no sx relief.
```

26. Two days later, on the morning of January 17, 2019, Alyson became dizzy and collapsed as she began walking to work at her neighborhood elementary school. She was found by her mother who helped her back to their home. 911 was called. Medics arrived and as they began their evaluation, Alyson began to hyperventilate, vomit, and cry due to severe abdominal pain. Alyson was taken to the ER at Ascension Borgess Lee Hospital, arriving at approximately 9:15 a.m. Two minutes after her arrival she became unresponsive and a Code Blue was called. Despite efforts of the ER staff, Alyson passed away at 9:46 a.m., on January 17, 2019.

27. At autopsy, blood clots were observed in Alyson's right posterior tibial veins. The pathologist concluded:

> II.  Deep vein thrombosis
>      A.  Reported history of leg pain, no reported history of trauma (clinical history)
>      B.  Pulmonary thromboemboli
>      C.  Pulmonary edema

28. Alyson's cause of death was attributed to "*pulmonary thromboemboli*" due to "*deep vein thrombosis.*"

**MEDICAL NEGLIGENCE – UNITED STATES OF AMERICA**

29. At all times relevant to the allegations of this Complaint, NP Bulaya owed a duty to plaintiff to provide her with such care and treatment as would a reasonable nurse

practitioner practicing in the field of family medicine when confronted with the same or similar conditions and circumstances.

30. NP Bulaya breached the applicable standards of care on January 15, 2019, while providing medical care to Alyson when she failed to:

   a. Recognize that DVT was high on the differential diagnosis list in light of Alyson's weight, use of birth control pills, and unexplained, sudden onset of calf pain.

   b. DVT needed to remain high on the differential diagnosis list until it was ruled in or out.

   c. Recognize that Alyson's calf pain was inconsistent with "hamstring tendonitis" or "hamstring injury," in light of its location, unexplained onset, and lack of improvement despite conservative, soft tissue care for 10 days.

   d. Perform and document a physical examination, including pedal pulses and Homan's, Bancroft and Pratt tests, in an effort to identify signs of DVT.

   e. Order an immediate ultrasound of the right lower leg.

31. As a direct and proximate result of the deviations from the standard of care set forth above, Alyson's DVT in her right calf went undiagnosed and untreated and progressed to a fatal pulmonary embolism, resulting in Alyson's death on the morning of January 17, 2019. Additionally, Alyson experienced conscious pain and suffering, fright, shock, and mortification prior to her death.

32. Plaintiff requests all damages allowed by MCL 600.2922, including, without limitation, the following:

   a. Reasonable medical, hospital, funeral, and burial expenses;

   b. Reasonable compensation for the pain and suffering the decedent experienced while she was conscious during the time between her injury and her death;

   c. Loss of wages, past, present, and future (*Denney v. Kent County Road Commission,* 317 Mich. App. 727, 731, 896 N.W. 2d 808, 812 (2016), *app denied,* 500 Mich. 997, 894 N.W 2d 608 (2017));

    d. Losses suffered by the next of kin as a result of the decedent's death, including:

1. Loss of services;
2. Loss of gifts and other valuable gratuities;
3. Loss of care, comfort, society, and companionship;
4. Costs of administration of the estate, including reasonable attorney fees and costs; and
5. Other miscellaneous losses.

  WHEREFORE, plaintiff requests the Court enter judgment against the United States of America in such amount as is determined to be fair and reasonable, together with costs, interest, and attorney fees.

DATE: September 21, 2021      CONYBEARE LAW OFFICE, P.C.

            By: /s/Barry R. Conybeare
               Barry R. Conybeare (P52056)
               Attorney for Plaintiff
               519 Main Street
               St. Joseph, MI 49085
               P: (269) 983-0561